UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MONALISA JOHNSON-CRADLE, on behalf of
herself and all others similarly situated,

                                    Plaintiff,

              -v-

KPS AFFILIATES INC., PPB INC., and TERRY
ENGLISH,

                                    Defendants.

CIVIL ACTION NO.: 22 Civ. 1052 (PGG) (SLC)

**OPINION & ORDER**

**SARAH L. CAVE,** United States Magistrate Judge.

## I.    INTRODUCTION

Plaintiff Monalisa Johnson-Cradle ("Johnson-Cradle") filed this putative class and collective action asserting claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a), and the New York Labor Law, §§ 160, 190 et seq. ("NYLL"), against Defendants KPS Affiliates Inc. ("KPS"), PPB Inc. ("PPB"), and Terry English ("English", with KPS and PPB, "Defendants"). (ECF No. 1 (the "Complaint")).  English owns and operates KPS and PPB, which provide security personnel for businesses throughout New York.  (Id. ¶ 51; ECF No. 31 ¶ 51).  Johnson-Cradle seeks to recover:   (1) unpaid overtime pay; (2) liquidated damages; (3) statutory damages; (4) attorneys' fees and costs; and (6) interest.  (ECF No. 1 ¶¶ 60–81, 87, 93, 98).

Before the Court is Johnson-Cradle's motion for conditional collective certification and for Court facilitation of notice pursuant to 29 U.S.C. § 216(b).  (ECF No. 34 (the "Collective Motion")). Johnson-Cradle asks the Court to conditionally certify a collective comprised of "all current and former employees who worked for the Defendants as nonexempt security guards, or similarly situated employees regardless of job title and worked in the State of New York from February 7,

2016 to the present."  (ECF No. 36 at 7 (the "Proposed Collective")).  She also seeks an order compelling Defendants to produce identifying information and equitably tolling the statute of limitations for potential opt-in plaintiffs until notice is distributed.  (ECF No. 34).

For the reasons set forth below, the Collective Motion is GRANTED IN PART and DENIED IN PART, to the extent that the Court conditionally certifies a collective of non-exempt security guards whom KPS employed and who worked at 1055 University Avenue, Bronx, New York 10452 from February 7, 2019 to the present.

## II.   BACKGROUND[1]

### A.   Factual Background[2]

Johnson-Cradle alleges that "Defendants own and operate a security guard company which provides security personnel for businesses throughout New York."  (ECF No. 1 ¶ 51).  In her Complaint and Declaration, Johnson-Cradle does not distinguish between PPB and KPS, and instead refers to "Defendants" as a single entity.  (See id. (referring to "Defendants" as "a security guard company"); id. ¶ 2 (alleging that she "worked for Defendants, a security company"); ECF No. 35-2 ¶ 3 (stating that "Defendants own and operate a security guard company").  Johnson-Cradle also alleges, "[u]pon information and belief, [that] in January 2020, Defendants

---

[1] In connection with the Collective Motion, I have considered: the Complaint (ECF No. 1); Defendants' answer to the Complaint (ECF No. 31 (the "Answer")); Johnson-Cradle's memorandum of law (ECF No. 36); Johnson-Cradle's declaration (ECF No. 35-3 ("Johnson-Cradle Declaration")); the affirmation of Amit Kumar, Esq. in support of the Collective Motion, and attached exhibits (ECF Nos. 35-1 – 35-10); Defendants' memorandum of law in opposition to the Collective Motion (ECF No. 45 (the "Opposition")); the Declaration of Terry English and attached exhibits (ECF Nos. 44-1 – 44-3 ("English Declaration")); and Johnson-Cradle's reply (ECF No. 51 (the "Reply")).

[2] Defendants dispute Johnson-Cradle's claims and deny any liability (see ECF Nos. 31, 45), and therefore, the Factual Background does not constitute a finding of fact for purposes of any other proceeding in this action.

PPB and English bought the assets of KPS" and "took over" KPS's liabilities, including KPS's "payroll." (ECF No. 1 ¶¶ 28–30).

Johnson-Cradle alleges that she "worked for Defendants from on or about December 1, 2020 until on or about February 12, 2021." (ECF No. 1 ¶ 54; see ECF No. 35-2 ¶ 5). "Throughout her employment, [Johnson-Cradle] worked as a security guard." (ECF No. 1 ¶ 55; see ECF No. 35-2 ¶ 7). As a security guard, she "controlled access to client premises, monitored client activity, enforced client policies, conducted patrols, monitored CCTVs, conducted security screens of clients, visitors and staff, and answered phones when necessary." (ECF No. 1 ¶ 55; see ECF No. 35-2 ¶ 8). "Throughout [her] employment with the Defendants, [Johnson-Cradle] provided security services at 1055 University Avenue, Bronx, NY 10452" (the "Bronx Location"). (ECF No. 35-2 ¶ 6).

Johnson-Cradle worked from 12:00 a.m. to 8:00 a.m. five days per week, and from 4:00 p.m. to 12:00 a.m. twice a week, for a total of 56 hours per week, for which Defendants paid her $15.50 per hour. (ECF No. 1 ¶ 66–67, 69; see ECF No. 35-2 ¶¶ 9–10). She alleges that "Defendants failed to pay [her] for all hours she worked" or "to compensate [her] at one- and one-half times [her] applicable regular rate of pay for all hours worked over 40 per week." (ECF No. 1 ¶ 70; see ECF No. 35-2 ¶ 11).

In her Declaration, Johnson-Cradle states, based on her "own personal experience and from speaking with other security guards[,]" that "Defendants' employment and compensation polic[i]es are the same." (ECF No. 35-2 ¶ 12). She claims that she "worked and spoke with at least 10 other security guards who performed similar work to [her,]" including "Security Guards [FNU] Hawkins, [FNU] McKenzie, [FNU] Sanni, and [FNU] Anosike." (Id. ¶ 13; see id. ¶ 14

("I learned through my conversations with these and other security guards as well as my observations of other security guards that the Defendants had similar pay policies for all of us."). "These conversations happened at [the Bronx Location] on the days that [Johnson-Cradle] worked." (Id. ¶ 15).  One such conversation occurred in January 2021 with Hawkins, McKenzie, Sanni, and Anosike, in which she "complain[ed] to them about how unfair it was that the Defendants didn't pay [her] for all of the overtime [she] worked."  (Id. ¶ 18).  Hawkins, McKenzie, Sanni, and Anosike told Johnson-Cradle that it was "Defendants' policy to not pay overtime to security guards" and that they too did not get paid for their overtime work.  (Id.)  In addition to the named coworkers, Johnson-Cradle claims to "know that there are other employees who work or worked for Defendants who were not paid their proper wages because of these issues[,]" and that "all the security guards working in New York suffered from this same illegal policy." (Id. ¶ 19).  From these conversations and her personal observations, Johnson-Cradle concludes that Defendants, collectively, have the same "employment and compensation polices" for all security guards.  (Id.)

Defendants contest several of Johnson-Cradle's allegations.  In his Declaration, English avers that "PPB and KPS each operate as two completely separate entities with different management and employees."  (ECF No. 44 ¶ 4).  In addition, "PPB employs union workers while KPS employs non-union workers."  (Id. ¶ 5).  English states that Johnson-Cradle "was briefly employed by KPS until she resigned on January 26, 2021[,]" and that she "was never employed by either PPB or [English]."  (Id. ¶¶ 7–8).

English confirms that Johnson-Cradle worked at the Bronx Location for the duration of her employment.  (ECF No. 44 ¶ 10).  He states, however, that "PPB never provided security

4

services at" the Bronx Location, and that "KPS only provided security services at the [Bronx Location] from December 1, 2020 through March 11, 2021." (<u>Id.</u> ¶¶ 11–12).  English also confirms that, "[d]uring the time [Johnson-Cradle] was employed by KPS, KPS also employed Security Guards [] Hawkins, [] McKenzie, [] Sanni, and [] Anosike."  (<u>Id.</u> ¶ 15).  English claims that KPS paid all required overtime wages to Johnson-Cradle and to Hawkins, McKenzie, Sanni, and Anosike.  (<u>Id.</u> ¶¶ 13–17).

**B.  <u>Procedural Background</u>**

On February 7, 2022, Johnson-Cradle filed the Complaint.  (ECF No. 1).  On October 13, 2022, the Honorable Paul G. Gardephe held an initial case management conference and entered a case management plan, setting, <u>inter alia</u>, the deadline for all fact discovery as January 11, 2023.  (ECF No. 28 ¶ 6; <u>see</u> ECF min. entry Oct. 13, 2022).  On October 28, 2022, Defendants filed their Answer.  (ECF No. 31).

On November 10, 2022, Johnson-Cradle filed the Collective Motion.  (ECF No. 34).  On January 9, 2023, Defendants filed their Opposition.  (ECF No. 45).  On January 27, 2023, Johnson-Cradle filed her Reply.  (ECF No. 51).  On February 2, 2023, after the deadline for fact discovery, the parties jointly requested a retroactive stay of discovery pending resolution of the Collective Motion.  (ECF No. 52 (the "Request")).

**III.  <u>DISCUSSION</u>**

**A.  <u>Collective Action Legal Standard</u>**

Section 216(b) of the FLSA provides, in pertinent part:

An action to recover . . . liability . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any

5

> such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).  While the FLSA does not prescribe any procedures for approval of actions brought collectively by those who are "similarly situated," courts have long construed § 216(b) to grant district court authority to order that notice be given to potential plaintiffs informing them of the option to join the suit.  See Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989) ("[D]istrict courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs."); Braunstein v. E. Photographic Labs., Inc., 600 F.2d 335, 336 (2d Cir. 1978) ("Although one might read the [FLSA], by deliberate omission, as not providing for notice . . . it makes more sense, in light of the 'opt-in' provision of § 16(b) of the Act, 29 U.S.C. § 216(b), to read the statute as permitting, rather than prohibiting, notice in an appropriate case.").[3]  Although orders authorizing notice are sometimes referred to as orders "certifying" a collective action, the FLSA does not contain a certification mechanism.  See Myers v. Hertz Corp., 624 F.3d 537, 555 n.10 (2d Cir. 2010)  Thus, where a court refers to "certifying" a collective action, it means only that the court has exercised its discretionary power "to facilitate the sending of notice" to similarly situated individuals.  Id.  The recognition of a collective action is thus equivalent to a "'case management' tool for district courts to employ in 'appropriate cases.'"  Id. (quoting Hoffmann-La Roche, 493 U.S. at 169, 174).

The Second Circuit has approved a two-step process for evaluating whether to approve a collective action.  Myers, 624 F.3d at 554–55.  First, the court must make "an initial determination" whether to send notice to potential opt-in plaintiffs who may be "similarly

---

[3] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.

situated" to the named plaintiffs as to whether the alleged FLSA violation occurred.  Id. at 555; Damassia v. Duane Reade, Inc., No. 04 Civ. 8819 (GEL), 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5, 2006).  A plaintiff must make a "modest factual showing" that he and the potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law."  Myers, 624 F.3d at 555 (quoting Hoffman v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997)).  This standard of of proof "cannot be satisfied simply by unsupported assertions."  Id.; see Guan Ming Lin v. Benihana Nat'l Corp., 755 F. Supp. 2d 504, 509 (S.D.N.Y. 2010) (explaining that "plaintiff's supporting allegations must be specific, not conclusory").  At this first stage, the case has not typically "had the benefit of full discovery," and thus courts consider the pleadings as well as supporting affidavits from the named plaintiff to evaluate whether he has made the "modest factual showing" that he is similarly situated to potential opt-in plaintiffs vis-à-vis the defendants' unlawful employment practices.  Korenblum v. Citigroup, Inc., 195 F. Supp. 3d 475, 480 (S.D.N.Y. 2016).  "For similar reasons, courts do not resolve factual disputes, decide ultimate issues on the merits, or make credibility determinations at the first stage."  Id.

At the second step, on a more complete record following discovery, the district court determines whether a "collective action" may proceed based on the named plaintiff having shown that the plaintiffs who opted in are actually "similarly situated" to him.  Korenblum, 195 F. Supp. 3d at 480.  If the court is not convinced, it may "de-certify" the action and dismiss the opt-in plaintiffs' claims without prejudice.  Id.

### B.  Application

Applying these standards, the Court finds that Johnson-Cradle's evidence does not support conditional certification of a state- or city-wide collective of all non-exempt security

guards who have worked for Defendants.  Instead, as explained further below, the Court finds that Johnson-Cradle has made the requisite "modest showing" to support a much narrower collective, comprised of non-exempt security guards who worked for KPS at the Bronx Location and as to whom Defendants' overtime policy may have violated the FLSA.

          1.  **"<u>Similarly Situated</u>"**

The test for determining whether a named plaintiff is "similarly situated" to the other members of a proposed collective is "whether there is a 'factual nexus' between the claims of the named plaintiff and those who have chosen to opt-in to the action." <u>Davis v. Lenox Hill Hosp.</u>, No. 03 Civ. 3746 (DLC), 2004 WL 1926086, at *7 (S.D.N.Y. Aug. 31, 2004) (quoting <u>Foster v. Food Emporium</u>, No. 99 Civ. 3860 (CM), 2000 WL 1737858, at *1 (S.D.N.Y. Apr. 26, 2000)). The plaintiff's burden is "minimal." <u>Cuzco v. Orion Builders, Inc.</u>, 477 F. Supp. 2d 628, 632 (S.D.N.Y. 2007).  A plaintiff can satisfy this burden "by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." <u>Realite v. Ark Rest. Corp.</u>, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998).

"In this Circuit, courts have regularly found named plaintiffs to be similarly situated to employees at locations where they did not work, provided that the plaintiffs demonstrate that they were all subject to the same allegedly unlawful policy or practice." <u>Hamadou v. Hess Corp.</u>, 915 F. Supp. 2d 651, 662 (S.D.N.Y. 2013).  With respect to certification across a state or "smaller territory, courts consider whether the plaintiffs have made an adequate factual showing to support an inference that such a uniform policy or practice exists, and whether the locations share common ownership or management." <u>Id.</u>

Here, Johnson-Cradle seeks conditional certification of this case as a collective action on behalf "of all current and former employees who worked for the Defendants as nonexempt security guards, or similarly situated employees regardless of job title and worked in the State of New York from February 7, 2016 to the present." (ECF No. 36 at 7). Johnson-Cradle argues that she has put forth "more than enough evidence to satisfy [her] evidentiary burden by demonstrating that Defendants' unlawful pay practices were common to them and to other similarly situated employees." (Id. at 10–11). Defendants argue, inter alia, that Johnson-Cradle's purported class is "overbroad and improper" in several respects. (ECF No. 45 at 14–19).

As an initial matter, the Court agrees with Defendants that Johnson-Cradle's evidence is insufficient to warrant certification to employees of PPB or any of English's other companies. (See ECF No. 45 at 15–16). Johnson-Cradle states that she worked for "Defendants" collectively. (ECF No. 35-2 ¶ 6; see ECF No. 1 ¶ 2). She does not specify, however, which company employed her, and provides no paystubs or other correspondence from the employing entity to support her claim that both KPS and PPB employed her. Moreover, Johnson-Cradle's own allegations suggest that PPB did not directly employ her and, instead, was only responsible for "the liabilities of KPS[.]" (ECF No. 1 ¶¶ 28–30). Defendants, on the other hand, attest that Johnson-Cradle only worked for KPS and not for PPB, which never provided services at the Bronx Location. (ECF No. 44 ¶¶ 7–9, 11). In the Reply, Johnson-Cradle does not contest this assertion or provide any evidence to the contrary. Accordingly, the Court declines to infer that she worked for PPB and could speak to its pay policies in addition to those of KPS.

In support of her Proposed Collective, Johnson-Cradle has provided only her own Declaration, in which she broadly states that, "Defendants' employment and compensation

policies are the same" and that she "knows this from [her] own personal experience and from speaking with other security guards."  (ECF No. 35-2 ¶ 12) (emphasis added).  The record demonstrates, however, that Johnson-Cradle's experiences and observations are only indicative of the compensation policies at KPS.  (See ECF No. 35-2 ¶ 6; 44 ¶¶ 7-9).  As discussed above, the Court can infer from the record only that Johnson-Cradle worked for KPS and that she details conversations only with other KPS employees at the Bronx Location.  She has provided no declaration, testimony, or factual allegations that would allow the Court to infer that she has any knowledge of the compensation policies of PPB or any of English's other companies.  Johnson-Cradle has thus failed to show that there is a "uniform policy or practice" that extends from KPS to PPB or any other company.  See Rojas v. Kalesmeno Corp., No. 17 Civ. 0164 (JCF), 2017 WL 3085340, at *5 (S.D.N.Y. July 19, 2017) (declining to include in collective employees of separate corporate entities for which plaintiff did not work, explaining that a "mere belief that the policies are the same" across companies "insufficient to justify collective action certification."); see also Apolinar v. R.J. 49 REST., LLC, No. 15 Civ. 8655 (KBF), 2016 WL 2903278, at *7 (S.D.N.Y. May 18, 2016) (explaining that "plaintiffs' own experiences as delivery persons employed at [one] location . . . says nothing about the existence of illegal employment policies at other [] location[s]").

Johnson-Cradle responds that whether Defendants are a "joint employer" or operate as a "single enterprise" are highly fact specific inquiries and should not be resolved at this stage of certification.  (ECF No. 51 at 7).  The fact-intensive nature of these inquiries, however, does not absolve her of the obligation to make the required threshold showing that there existed a "uniform unlawful policy" across these companies.  See Rojas, 2017 WL 3085340, at *4 ("The question at this juncture is not whether the [separate companies] were part of the same

enterprise, but rather whether there was a uniform policy or practice."). Again, Johnson-Cradle has failed to provide any factual support for her conclusory allegation that "Defendants' employment and compensation policies are the same." (ECF No. 35-2 ¶ 12). See Rojas, 2017 WL 3085340, at *4 (finding that plaintiffs failed to present evidence of uniform policy or practice at multiple locations). To the extent that Johnson-Cradle relies on English's common ownership of KPS and PPB as evidence of a single employer or joint enterprise theory, this fact alone is insufficient to satisfy even her modest evidentiary burden at this stage. Sanchez v. Salsa Con Fuego, Inc., No. 16 Civ. 473 (RJS) (BCM), 2016 WL 4533574, at *4 (S.D.N.Y. Aug. 24, 2016) ("Even when locations or businesses share common ownership, plaintiffs must allege sufficient facts to support an inference of a common policy across all locations or businesses."); see also Lubas v. JLS Grp., Inc., No. 18 Civ. 6611 (KAM) (SJB), 2020 WL 4210754, at *10 (E.D.N.Y. July 22, 2020) (explaining that while "evidence of common ownership can help support allegations of a uniform wage policy, evidence of this alone without more is insufficient"); Guaman v. 5 M Corp., No. 13 Civ. 3820 (LGS), 2013 WL 5745905, at *3 (S.D.N.Y. Oct. 23, 2013) (declining to extend collective to commonly owned but distinct restaurants because "plaintiff's evidence of common ownership is not evidence that the same unlawful employment policy was in place at each of the four restaurants.").

The Court also agrees with Defendants that Johnson-Cradle's evidence is insufficient to merit certification state- or city-wide because she offers no evidence about other KPS locations in New York City or State. (See ECF No. 45 at 16-26). Johnson-Cradle has attested only to the

experiences she and the colleagues with whom she spoke had at the Bronx Location.[4] (ECF No. 35-2 ¶ 15).  There is accordingly no factual basis from which the Court can infer "that all the security guards working in New York suffered from this same illegal policy."  (ECF No. 35-2 ¶ 19); see Rojas, 2017 WL 3085340, at *5 (declining to extend collective to other restaurants where plaintiffs had not conversed with employees at other locations and their "mere belief that the polices are the same at the other restaurants [was] insufficient to justify collective action certification"); Hamadou, 915 F. Supp. 2d at 666 (denying statewide collective certification where there was "no evidence of any untoward activity outside" the two territories in New York City the court did certify); Anglada v. Linens 'N Things, Inc., No. 06 Civ. 12901 (CM) (LMS), 2007 WL 1552511, at *5 (S.D.N.Y Apr. 26, 2007) (recommending denial of nationwide class where there was a "total dearth of factual support" for whether employees at any other store were similarly situated).

Defendants also oppose Johnson-Cradle's request to include in the Proposed Collective all "non-exempt security guards, or similarly situated employees regardless of job title." (ECF No. 45 at 13–14).  They argue that the language "regardless of job title" is inappropriate given that Johnson-Cradle "has provided no information, evidence, or allegations related to any

---

[4] Johnson-Cradle has submitted a "screenshot" from Indeed.com, a job posting and employee review website, in which "anonymous security guards complained of the Defendants' pay practices[.]" (ECF No. 36 at 7; see ECF No. 35-10).  The Court declines to deem this as valid evidence that KPS security guards at other locations are similarly situated to Johnson-Cradle.  See Mason v. Lumber Liquidators, Inc., No. 17 Civ. 4780 (MKB), 2019 WL 2088609, at * 8 n.12 (E.D.N.Y. May 13, 2019) (declining to consider online reviews from a [job board website] because the document was "unsworn, and there is no indication as to whether the anonymous online reviews from glassdoor.com were drafted by [plaintiffs] other than those who already submitted declarations in support of the instant motion.").  In any event, the screenshot does not provide a basis from which the Court could ascertain at which locations the anonymous reviewers worked, because, for example, the label "Long Island City, NY" on the first anonymous reviewer could mean the location where the reviewer lives and not their job site.  (ECF No. 35-10 at 1).

other position." (Id. at 18-19).  In her Reply, Johnson-Cradle asserts that the all-encompassing language "would keep Defendants from keeping an employee off the collective list if they had the job titles of 'Guard,' 'Watchman,' 'Night Watchman,' or something similar instead of 'Security Guard.'"  (ECF No. 51 at 10).

The Court finds that Johnson-Cradle has provided no factual basis from which to infer that she is similarly situated to non-security guard employees at KPS.  The entirety of the record focuses on security guards at KPS's Bronx Location, where Johnson-Cradle and the colleagues with whom she spoke all worked as "security guards[,]" and as to whom Defendants applied the "same illegal policy[]" of failing to "pay overtime[.]"  (See ECF Nos. 1 ¶ 2; ECF No. 35-2 ¶¶ 7, 12, 18, 19).  In addition, Johnson-Cradle contends that she is "similarly situated to other security guards."  (ECF No. 51 at 7 (emphasis added); see also ECF No. 36 at 11–12).  Nowhere in the record is there any mention of a job title other than security guard, let alone evidence that Johnson-Cradle is similarly situated to such other employees.  Cf. Taveras v. D & J Real Est. Mgmt. II, LLC, 324 F.R.D. 39, 44 (S.D.N.Y. 2018) (noting that "different job titles may be included within a conditional collective if there is evidence that plaintiffs may be similarly situated as to a common policy to violate the FLSA.") (emphasis added).  The Court will not endorse an overly broad collective without the requisite factual showing that Johnson-Cradle is similarly situated to employees other than security guards.  See Gordon v. Kaleida Health, No. 08-CV-378S (WMS), 2009 WL 3334784, at *6 (W.D.N.Y. Oct. 14, 2009) (denying an extension of collective where "[t]here is no factual basis upon which to conditionally certify a class that extends beyond the job titles and facilities specifically identified in the Complaint and affirmations."); see also Mikityuk v. Cision US Inc., No. 21 Civ. 510 (LJL), 2021 WL 1750370, at *7 (S.D.N.Y. May 4, 2021) (finding

that "the language 'other similar roles' [in collective notice] [was] impermissibl[y] vague and not helpful"); Guzelgurgenli v. Prime Time Specials Inc., 883 F. Supp. 2d 340, 356 (E.D.N.Y. 2012) (striking as vague and unsupported "all other persons in similar positions" from the proposed collective ).

Defendants' final argument that Johnson-Cradle "failed to make the modest showing required to establish that [she] and the other security guards were impacted by a common violation of the FLSA," (ECF No. 45 at 14), focuses on the merits of Johnson-Cradle's claims, and therefore is misplaced at the conditional certification stage of this litigation.  See Fasanelli v. Heartland Brewery, Inc., 516 F. Supp. 2d 317, 322 (S.D.N.Y. 2007) (collecting cases explaining that district courts must not resolve factual disputes or resolve issues that go to the merits of plaintiffs' claims at the conditional certification stage); Martinez v. Zero Otto Nove Inc., No. 15 Civ. 899 (ER), 2016 WL 3554992, at *4 n.3 (S.D.N.Y. June 23, 2016) (noting that defendants' efforts to "challeng[e] the factual accuracy of Plaintiffs' allegations" were "futile" at conditional certification stage); Zhao v. Benihana, Inc., No. 01 Civ. 1297 (KMW), 2001 WL 845000, at *2 (S.D.N.Y. May 7, 2001) (noting that court "need not evaluate the merits of plaintiff's claims" in deciding whether to grant conditional certification).

Accordingly, the Court GRANTS IN PART and DENIES IN PART Johnson-Cradle's Collective Motion, to the extent that the Court authorizes conditional certification of a collective of non-exempt security guards employed by KPS at the Bronx Location for the time period discussed below.  (See § III.B.2.b, infra).

2. **Notice and Consent Form**

As noted above, Johnson-Cradle requests that notice of this action be sent to all non-exempt security guards who worked for Defendants, regardless of job title, for the period of six years before the Complaint was filed. (ECF No. 36 at 7 (the "Notice"); see ECF Nos. 35-3 – 35-9). Johnson-Cradle also requests that the Notice, and a reminder notice, be sent by regular mail, email, and text message to all covered employees, as well as requiring Defendants to post the Notice in a conspicuous place at the work location of covered employees. (ECF No. 34). Defendants argue that the Notice, as written, is improper and contest certain methods of distribution. (ECF No. 45 at 19).

As discussed below, the Court finds that several amendments to the Notice and its manner of distribution are appropriate.

a. **Content of the Notice**

For the reasons set forth above, the Court authorizes notice to be sent only to KPS non-exempt security guards who worked at the Bronx Location. The parties are directed to meet and confer to revise the Notice to narrow its scope consistent with this Opinion and Order.

b. **Time Period**

"The statute of limitations applicable to a claim for unpaid wages and/or overtime compensation under the FLSA is two years from the date that the claim accrued or three years for a cause of action arising out of a willful violation." Taveras, 324 F.R.D. at 47 (citing 29 U.S.C. § 255(a)). Allegations of willful FLSA violations provide a sufficient basis to apply the three-year statute of limitations at the conditional certification stage. Id.

Johnson-Cradle seeks certification of a six-year period—the statute of limitations for NYLL claims—which Defendants oppose. (ECF Nos. 36 at 5; 45 at 17). Johnson-Cradle has, however, alleged that Defendants' FLSA violations were willful, which, as noted above, is sufficient at the conditional certification stage to apply the three-year limitations period. (ECF No. 1 ¶¶ 1, 5, 39, 44, 79, 82, 92, 96). In circumstances such as these, where the question whether Defendants willfully violated the FLSA remains disputed and Johnson-Cradle has not yet moved for certification of her NYLL claims, a three-year notice period is appropriate. See Garcia v. Chipotle Mexican Grill, Inc., No. 16 Civ. 601 (ER), 2016 WL 6561302, at *9 (S.D.N.Y. Nov. 4, 2016) (permitting notice to be sent to hourly employees of defendants' New York City locations within three years before complaint was filed); Hamadou, 915 F. Supp. 2d at 668 (permitting notice to be sent to hourly employees at select gas stations within three years before complaint filed); accord Khamsiri v. George & Frank's Japanese Noodle Rest Inc., No. 12 Civ. 265 (PAE), 2012 WL 1981507, at *1 (S.D.N.Y. June 1, 2012); Guzelgurgenli, 883 F. Supp. 2d at 356–57; Jason v. Falcon Data Com, Inc., No. 09 Civ. 3990 (JG) (ALC), 2011 WL 2837488, at *7 (S.D.N.Y July 18, 2011); Fasanelli, 516 F. Supp. 2d at 323; Khalil v. Original Homestead Rest., Inc., No. 07 Civ. 695 (RJH), 2007 WL 7142139, at *2 (S.D.N.Y. Aug. 9, 2007). Accordingly, the Notice shall be sent only to KPS non-exempt security guards who worked at the Bronx Location on or after February 7, 2019.

### c.  **Distribution of the Notice**

Johnson-Cradle seeks authorization to distribute the Notice, as well as a reminder notice, by regular mail, email, and text message to all covered employees, and to require Defendants to post the Notice and accompanying consent forms in covered employees' work locations. (ECF No. 36 at 5, 14–17). Defendants oppose having to post the Notice at the Bronx Location

because KPS no longer staffs security guards there.  (ECF No. 45 at 21–22).  In her Reply, Johnson-Cradle acknowledges the changed circumstance but asks the Court instead to require Defendants to post notice in the locations where they currently staff security guards.  (ECF No. 51 at 10).

The Court declines to require Defendants to post the Notice in other locations where KPS security guards currently work.  As explained above, Johnson-Cradle has not offered evidence relating to KPS's compensation policies for security guards at any location other than the Bronx Location, and therefore, posting notices at other KPS locations is not required.  (See § III.B.1, supra).  KPS no longer provides security guards for the Bronx Location, and is therefore excused from posting the Notice at that location as well.  See Guanglei Jiao v. Shang Shang Qian Inc., No. 18 Civ. 5624 (DG) (VMS), 2021 WL 4356043, at *5 (E.D.N.Y. Sept. 24, 2021) (excusing defendants from posting notice if the only restaurant at which plaintiff worked were to close).

Finally, the parties dispute additional textual and formatting aspects of the proposed Notice.  (See ECF No. 45 at 19–22; ECF No. 51 at 10–12).  The parties are therefore ordered to meet and confer in attempt to resolve the remaining Notice disputes.  The parties shall submit to the Court a new proposed Notice within two weeks of the date of this Order.

### 3.  Production of Employee Contact Information

To facilitate distribution of the Notice, Johnson-Cradle requests that the Court order Defendants to produce certain contact information of potential opt-in plaintiffs.  (ECF No. 36 at 17–18).  As is typical following a grant of conditional certification of a FLSA collective, KPS shall produce a computer-readable list containing, for all security guards who worked at the Bronx Location for the three-year period before the Complaint was filed (i.e., since February 7, 2019), the: (i) name; (ii) last known mailing address; (iii) last known telephone number; (iv) email

address if known; and (v) dates of employment.  See e.g., Rojas, 2017 WL 3085340, at *7 (ordering disclosure of contact information to facilitate notice); accord Garcia, 2016 WL 6561302, at *9; Iriarte v. Redwood Deli & Catering, Inc., No. 07 Civ. 5062 (FB) (SMG), 2008 WL 2622929, at *5 (E.D.N.Y. June 30, 2008) (ordering production of contact information for collective members); Fasanelli, 516 F. Supp. 2d at 324 (same); Cuzco, 477 F. Supp. 2d at 636 (same); see also Khamsiri, 2012 WL 1981507, at *2 (noting that discovery of contact information is appropriate at the notice stage in FLSA collective actions).

The Court, consistent with others in this Circuit, denies Johnson-Cradle's request for the social security numbers and compensation rates of potential members of the collective as unnecessary and unduly invasive of the privacy of KPS's employees.  See Sarr v. Sinergia, Inc., No. 22 Civ. 3610 (VEC), 2022 WL 4952972, at *5 (S.D.N.Y. Oct. 4, 2022) (denying request to produce potential collective members' social security numbers); accord King v. Fedcap Rehab. Servs., No. 20 Civ. 1784 (VSB), 2022 WL 292914, at *12 (S.D.N.Y. Feb. 1, 2022); Tueros v. Urb. Health Plan, Inc., No. 21 Civ. 4525 (JMF) (RWL), 2022 WL 2752070, at *16 (S.D.N.Y. July 14, 2022) (same); see also Ortiz v. Eskina 214 Corp., No. 21 Civ. 1537 (ALC) (KHP), 2021 WL 5086273, at *4 (S.D.N.Y. Nov. 2, 2021) ("This Court is not aware of authority supporting disclosure of compensation rates in connection with conditional certification notices."); Taylor v. R.J.T. Motorist Serv., Inc., No. 19 Civ. 1155 (PMH), 2020 WL 4937483, at *5 (S.D.N.Y. Aug. 24, 2020) (explaining that "compensation rates are not necessary for contacting potential opt-in plaintiffs[.]").

### 4. **Equitable Tolling Is Not Warranted**

Finally, Johnson-Cradle asks the Court to toll the statute of limitations for all potential

opt-in plaintiffs until the Notice is distributed. (ECF No. 34). Defendants oppose equitable tolling.

(ECF No. 45 at 23–25).

In this Circuit,

> when determining whether equitable tolling is applicable, a district court must
> consider whether the person seeking application of the equitable tolling doctrine
> (1) has acted with reasonable diligence during the time period she seeks to have
> tolled, and (2) has proved that the circumstances are so extraordinary that the
> doctrine should apply.

Zerilli-Edelglass v. New York City Transit Auth., 333 F.3d 74, 80–81 (2d Cir. 2003), as amended (2d

Cir. July 29, 2003). "Equitable tolling is appropriate 'only in rare and exceptional circumstances,

where a plaintiff has been prevented in some extraordinary way from exercising his rights.'"

Garcia, 2016 WL 6561302, at *10 (quoting Vasto v. Credico (USA) LLC, No. 15 Civ. 9298 (PAE),

2016 WL 2658172, at *16 (S.D.N.Y. May 5, 2016)). In the FLSA context, "[a]n extraordinary

circumstance might exist if the employee shows that it would have been impossible for a

reasonably prudent person to learn of the cause of action . . . or if the defendant concealed from

the plaintiff the existence of the cause of action." Whitehorn v. Wolfgang's Steakhouse, Inc., 767

F. Supp. 2d 445, 449 (S.D.N.Y. 2011).

While Johnson-Cradle claims "extraordinary circumstances" justify equitable tolling, she

fails to show, or even argue, that any potential opt-in plaintiffs have met the first "'diligence'

prong" of the test set out by the Second Circuit. Knox v. John Varvatos Enterprises Inc., 282 F.

Supp. 3d 644, 659 (S.D.N.Y. 2017). What is relevant is not the "diligence of a plaintiff who has

already timely filed a claim," but rather the "diligence of a plaintiff who is seeking the application

of the doctrine." Knox, 282 F. Supp. 3d at 658 (emphasis added).  Johnson-Cradle has made no

showing that any potential opt-in plaintiffs have "acted with reasonable diligence" to pursue

their claims. Zerilli-Edelglass, 333 F.3d at 81.  Rather, her contention that "equitable tolling is

necessary to avoid any further risks to the collective members' claims," (ECF No. 36 at 18), rests

only "on the assumption that potential plaintiffs have been, and will remain, unaware of their

rights unless and until they receive notice of this lawsuit." Hintergerger v. Cath. Health Sys., No.

08 Civ. 380S, 2009 WL 3464134, at *15 (W.D.N.Y. Oct. 21, 2009).  There is nothing on the record

from which the Court can conclude the Defendants concealed the right of KPS security guards to

overtime pay (ECF No. 1 ¶ 78), or

> that a reasonably prudent potential plaintiff would not have known of his or her
> right to receive overtime pay after 40 hours.  Pursuit of that right is not dependent
> on the commencement or certification of a collective action, and a reasonably
> diligent person could have acted by pursuing an individual or collective action for
> relief.

Hintergerger, 2009 WL 3464134, at *15; accord Contrera v. Langer, 278 F. Supp. 3d 702, 724

(S.D.N.Y. 2017); Knox, 282 F. Supp. 3d at 658.

Because of Johnson-Cradle's lack of evidence on the current record, and the Court

authorization of notice, which will be distributed to a potentially large collective of potential opt-

in plaintiffs, the Court finds that "determination as to the timeliness of each future plaintiff's

action is better reserved for a future proceeding." Whitehorn, 767 F. Supp. 2d at 450.

Accordingly, Johnson-Cradle's request for equitable tolling is DENIED WITHOUT PREJUDICE and

"with the understanding that individual plaintiffs may seek such tolling on demonstrating its applicability" to that plaintiff's circumstances.  Id.[5]

## IV.   CONCLUSION

For the reasons set forth above, the Collective Motion is GRANTED IN PART and DENIED IN PART as follows:

(1)  Pursuant to 29 U.S.C. § 216(b), the Court conditionally certifies this action as a collective action comprised of security guards who worked for KPS at the Bronx Location on or after February 7, 2019 (the "Collective").

(2)  The parties shall promptly meet and confer regarding the Court-ordered changes to the proposed Notice and, by **May 10, 2023**, submit a revised notice for the Court's review and approval.

(3)  By **May 26, 2023**, Defendants shall provide to Johnson-Cradle's counsel, for the employees within the definition of the Collective, the following information: (i) name; (ii) last known mailing address; (iii) last known telephone number; (iv) email address if known; and (v) dates of employment.

(4)  Once approved by the Court, the notice and consent form shall be mailed to all potential members of the Collective, who must opt-in to this action within 60 days of the date of distribution.

---

[5] The Court notes that according to Defendants, KPS only provided security guards at the Bronx Location from December 1, 2020 through March 11, 2021.  (ECF No. 45 at 2).  Assuming the truth of this assertion, any potential opt-in plaintiffs will not be time-barred under the time period the Court has specified for the Notice.  The FLSA statute of limitations for willful violations, as alleged here, is three years.  29 U.S.C. § 255(a).  The earliest date that a KPS security guard who worked at the Bronx Location could become time-barred would accordingly be December 1, 2023.

(5) Johnson-Cradle's request for equitable tolling is DENIED without prejudice to any individual opt-in plaintiff's ability to request tolling on a showing that tolling applies to that plaintiff's particular circumstances.

(6) The Request is GRANTED.  The parties shall meet and confer and, by **June 2, 2023**, file a joint letter (the "Letter") proposing a schedule for the completion of any remaining discovery.  In the Letter, the parties shall also advise whether they request a settlement conference with the Court.  To the extent the parties are prepared to discuss settlement sooner, they may request a settlement conference at any time.

The Clerk of the Court is respectfully directed to close ECF Nos. 34 and 52.

Dated:       New York, New York
             April 26, 2023

                                    SO ORDERED.


                                    _____
                                    **SARAH L. CAVE**
                                    **United States Magistrate Judge**